UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                              CHAPTER 11

**QUICK SERVE, LLC**                                                         Case No. 24-10518-KB

       Debtor

FIRST AND FINAL APPLICATION
FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES OF
GENERAL BANKRUPTCY APPLICANT

      **Pursuant to Bankruptcy Code Section 330**, 11 U.S.C. §330, William S. Gannon and William S. Gannon PLLC, 740 Chestnut Street, Manchester, NH 03101 (collectively, the "Applicant") hereby submits this First And Final Application for Allowance And Payment of Fees and Expenses ("this Application") for an order in substantially the same form as the proposed order accompanying this Motion (the "Proposed Order") that:

      A.     Allows Applicant fees and expenses for actual and necessary Services rendered by Applicant to Debtor in the amount of **$139,341.00** (the "Fees") and for reimbursement of expenses incurred by Applicant in connection therewith in the amount of **$495.25** (the "Expenses"), all for the period from the Petition Date, **July 30, 2024,** through the conversion of this case to a Chapter 7 case; and

      B.     Authorizes Applicant to apply immediately the balance of Applicant's retainer -- $11,750.00 – in partial payment of the Fees and Expenses to the extent allowed by this Court.

      **In support of this Application**, Applicant states as follows:

      1.     Your Applicant received a **$20,000.00** retainer of which **$8,250.00** was used for prepetition bankruptcy services rendered to Debtor, leaving a remaining balance of **$11,750.00**.

2. Applicant has neither received nor requested any prior awards of compensation or reimbursement of expenses in this Case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 1471.

4. The United States District Court for the District of New Hampshire has referred all cases under Title 11 to the Bankruptcy Judges for this district.

5. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A) and (O).

**Employment of Applicant.**

6. On **July 30, 2024**, Debtor commenced this case by filing a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Petition Date").

7. On **September 11, 2024**, this Court authorized the retention of Applicant (the "Retention Order"), effective as of the Petition Date [Doc. No. 67].

8. This Court imposed no limitation on the amount of fees which could be paid to Applicant in this Case in the Retention Order or any other order.

9. This Case is a reorganization proceeding under Subchapter V of the Bankruptcy Code that led to the confirmation of Debtor's Second Amended Plan of Reorganization by consensus.

**Current Application Fee and Expense Summary.**

10. During the period of **July 30, 2024** through **January 8, 2025** (the "Application Period"), your Applicant has rendered Services as Applicant to the Debtor totaling **$139,341.00**, as measured by Applicant's usual time charges as shown by the detailed, itemized statement attached as Exhibit A (the "Itemized Statement").

11. Your Applicant has incurred additional out-of-pocket expenses in connection with Applicant's representation and administration in this Case during the Application Period totaling **$495.25** for which reimbursement is being sought, which are itemized in Exhibit A.

12. In total, your Applicant seeks an order allowing Fees and Expenses for the Application Period in the amount of **$139,836.25**.

13. The following is a summary on a person-by-person basis showing all time charges incurred by Applicant to the Committee during the Application Period and the hourly and total compensation for each such person:

| FIRM STAFF | TOTAL HOURS | HOURLY RATE | TOTAL TIME CHARGES |
|---|---|---|---|
| **Attorneys:** | | | |
| William S. Gannon | 216.68 | $525.00 | $ 113,757.00 |
| **Paralegals:** | | | |
| J.A-Koehler | 35.15 | $120.00 | $ 4,218.00 |
| M. Voisine | 177.50 | $120.00 | $ 21,300.00 |
| B. Venuti | 0.55 | $120.00 | $ 66.00 |
| **Totals:** | **429.88** | | **$ 139,341.00** |

14. The average hourly rate for Services rendered as set forth in this Application is **$324.14** based on the gross amount of the Fees for which allowance is requested by Applicant.

15. The compensation for Services and reimbursement of expenses during the Application Period sought by Applicant will not be shared directly or indirectly with any other person or firm.

**General**

16. In accordance with the United States Trustee's Guidelines and Categories (the "Categories"), this Section summarizes by Category the issues, subjects and matters with respect to which Applicant provided Services (collectively, "Matters" and "Services") during the Application Period subject to the following qualifications:

   a. Applicant did not include any Category with respect to which Applicant did not provide Services in this case in Applicant's judgment.

      **b.**    Applicant included an approximation of the "hours spent" on Services In each Category. Applicant strove to allocate time to the Category closely related to the Matter or Service. The allocation decisions were unavoidably subjective in many instances because Categories and the Services rendered in connection with them overlap. Many of the Services could be placed in more than one Category based on the judgment of the attorney preparing the Application. For example, discussions and negotiations with secured creditors regarding adequate protection and plan treatment tend to blend into each other and could properly in Applicant's judgment be categorized as "Adequate Protection," "Cash Collateral," or "Plan and Confirmation." For example, services related to use and expenditure of cash collateral relate directly to the formulation of a plan of reorganization because of the need to identify and prioritize liens on property of the estate, the value of collateral and develop a working relationship with secured creditors if possible.

      **c.**    The Services in each Category were performed or rendered during the Application Period.

      **d.**    To the extent that the amount of time allocated to a Category is less than 5 hours, Applicant chose not to provide additional description in certain instances, but will do so upon request of this Court or any party in interest.

      **e.**    Although Applicant believes that the "hours spent" allocated to each Category is reasonably accurate for statistical purposes, Applicant did not make a concentrated effort to allocate all the time shown by <u>Exhibit A</u>, which is the more accurate and descriptive document.

**Services and Matters Categories**

17. **Adequate Protection and Stay Relief Category.**  During the Application Period, Applicant estimates that Applicant spent approximately **2.2** hours rendering Services related to matters included in this Category.  Debtor in the Applicant succeeded in negotiating agreements pertaining to the use of cash collateral with Enterprise Bank ("Enterprise Bank"), Rockingham County Economic Development Corporation ("REDC") and the United States Small Business Administration ("SBA") early in the case.   Making the adequate protection payments prevented stay relief motions from being filed by the secured creditors.  To the extent this Category includes resolving adequate protection issues, the time is included in "Cash Collateral

18. **Adversary Proceedings Category.**  During the Application Period, Applicant estimates that Applicant spent approximately **7.45** hours rendering Services related to matters included in this Category.

19. **Avoidance Actions Category.**  During the Application Period, Applicant estimates that Applicant spent Approximately **4.7** hours rendering Services related to matters included in this Category.   This Category includes working with Debtor's Business and Financial Consultant, Elisa Sartori and Greenridge Financial Services and paralegals to identify potentially  avoidable preferential transfer  actions,  fraudulent transfer actions,  postpetition transfer actions and other avoidance claims. The Applicant prepared and served demand letters on potential preferential transferees and a draft or form preferential transfer complaint.  The Applicant recovered one postpetition transfer in the approximate amount of $8500 that was used to pay rent due to the Landlord.  Before Debtor could bring any avoidance actions, this case converted to a liquidation proceeding, but the Applicant has made all of the preliminary work done available to the Chapter 7 Trustee. All of the paralegal time related to this Category is included in Case Administration.

20. **Business Operations Category.**  During the Application Period, Applicant estimates that Applicant spent approximately **4.7** hours rendering Services related to matters included in this Category.  Debtor owned and operated one of 3 "Beach Plum" restaurants.  The other 2 Beach Plums are owned by an affiliate, 2800 Lafayette Road LLC.  Debtor employed Youngclaus & Company as its outside, certified public accountant and day to day accountant. Debtor kept point-of-sale revenue records. While the QuickBooks accounting records seemed to be accurate, Debtor seemed somewhat disconnected from the accounting information that he needed to manage the business and respond to challenges like price increases as they arose with the result that applicant recommended retaining Elisa Sartori and Greenridge Financial Services.

 During this case, Applicant consulted frequently with Ms. Sartori with respect to a number of business issues. Pricing restaurant items, particularly clams and lobster, proved to be a challenge as the wholesale price of the products increased rapidly.   Debtor sold very little beer and wine.  It did not have a full liquor license.  The Applicant supported and discussed with management frequently the need to make the changes recommended by Ms. Sartori.  Only in the last days of the reorganization case did management begin to price lobster "at market."

21. **Case Administration.**  The Applicant views this Category as a "catch-all" Category for necessary, administrative Services and Matters that do not seem to fall into any of the more specific Categories.  It includes among other things: (a) reviewing the Questionnaire prepared by Debtor, (b)  preparing and amending  as necessary the Petition, Statement of Financial Affairs and Schedules based on the Questionnaire and discussions with Debtor and management (the "Petition"); (c) scheduling conferences, meeting and hearings, (d) filing the UST Monthly Operating Reports ("MORs"); (e) responding to general questions from the United States Trustee (the "UST"), creditors and other parties in interest regarding the status of the Case

from time to time; (f) communicating with the UST regarding accounting, insurance and other matters and (g) preparing for and attending the Initial Debtor Interview, the First Meeting of Creditors and the First Status Conference. All of the time spent by paralegals is included in this Category. This case required an inordinate amount of communication with Mr. Lee. During the Application Period, Applicant spent approximately **236.61** hours rendering Services to Debtor in this Category as shown by the Itemized Statement allocated as follows: Attorneys **23.41**; Paralegals **213.20**.

22. **First Day Orders.** During the Application Period, Applicant estimates that Applicant spent approximately **2.9** hours rendering Services related to matters included in this Category. Applicant prepared and filed a true "First Day Motion" for permission to pay prepetition wages and salaries to employees. The ex parte, emergency motion for permission to use cash collateral is included in the "Cash Collateral Use Category," which is a slight deviation from the UST Categories.

23. **Cash Collateral Use Category.** During the Application Period, Applicant estimates that Applicant spent approximately **32.95** hours rendering Services related to matters included in this Category. This Category includes obtaining and reviewing a UCC/Lien Search Report from the New Hampshire Department of State, analyzing the UCC/Lien Search Report to identify liens of record, the relative priorities of the liens of record and the discussions with secured creditors that preceded the filing of Debtor's ex parte, emergency motion filed in this case with the substantial agreement of Enterprise Bank, REDC and SBA. It also includes the preparation of the so-called Cash Collateral Budgets and supporting Declarations needed for approval. The process is always detailed and fairly difficult, but harder in this case and normal

because of the manner in which Debtor To its records. In this case, Debtor filed three (3) Cash collateral motions, including the ex parte, emergency motion, which required multiple hearings.

24. **Claims Objections Category.** During the Application Period, Applicant estimates that Applicant spent approximately **0** hours rendering Services related to matters included in this Category.

25. **Contested Matter Category.** During the Application Period, Applicant estimates that Applicant spent approximately **2.3** hours rendering Services related to matters included in this Category. Only the contested matter resulting from Debtor process efforts to assume the lease of its business premises is included in this Category

26. **Creditor Issues Minor Category.** During the Application Period, Applicant estimates that Applicant spent approximately **0.4** hours rendering Services related to matters included in this Category.

27. **Employment, Fee and Other Applications Category.** Applicant spent approximately **7.5** hours rendering Services related to matters included in this Category as shown by the Itemized Statement. The Services in this Category related to the retention of Debtor's Applicant and Debtor's Financial Consultant. Applicant did not include in this Application any time related to the preparation of this Application.

28. **Executory Contracts and Leases Category.** During the Application Period, Applicant estimates that Applicant spent approximately **26** hours rendering Services related to matters included in this Category. Debtor and Applicant made a substantial effort to assume the lease of its business premises owned by Rock Acquisition, LLC (the "Landlord") in and outside of a plan of reorganization. Applicant tried to convince the secured creditors, Ace Funding and Nancy Lee to lend all, or a substantial part of the approximately $200,000 owed to the Landlord.

Applicant also prepared several term sheets for discussion among Landlord and the secured creditors. Ultimately, Debtor could not convince Landlord that it would be able to operate profitably enough to pay the $23,600 in base rent due Landlord each and every month.

29. **Plan and Confirmation.** During the Application Period, Applicant estimates that Applicant spent approximately **36.25** hours rendering Services related to matters included in this Category. Debtor prepared and filed a Plan of Reorganization and a First Amended Plan of Reorganization in this case. Applicant and Ms. Sartori were called upon to spend a substantial amount of time preparing the financial projections needed to support the proposed plans. Except for the Landlord, Applicant believes that the plans were acceptable to other creditor constituencies.

30. **Plan Implementation Category.** During the Application Period, Applicant estimates that Applicant spent approximately **0.65** hours rendering Services related to matters included in this Category.

31. **Sales and Other Asset Dispositions Category.** During the Application Period, Applicant estimates that Applicant spent approximately **3.85** hours rendering Services related to matters included in this Category. Applicant met with David Mader, a Portsmouth-area restaurant consultant, regarding the prospects for a sale of the business. Applicant prepared a motion for permission to retain Mr. Mader. For a number of reasons, Debtor chose not to employ Mr. Mader at that point in time.

32. **State Court Litigation Category.** During the Application Period, Applicant estimates that Applicant spent approximately **18.15** hours rendering Services related to matters included in this Category. All of the time in this Category relates to the marital proceeding involving Robert Lee, who is the sole member of Debtor and his wife Nancy Lee. Mr. Lee's

equity interests in Debtor were and are property of the so-called marital estate. In the marital proceeding, counsel to Ms. Lee filed a motion requesting an order finding Mr. Lee to be in contempt for authorizing the commencement of this case. As a result, Applicant had to engage in numerous discussions with Ms. Lee's attorneys, Steven Shadallah and Michael Feinman, and appear virtually at the contempt hearing.

33. **Tax Matters Category.** During the Application Period, Applicant estimates that Applicant spent approximately **2.85** hours rendering Services related to matters included in this Category.

**WHEREFORE,** Debtor respectfully requests this Court to grant Debtor the relief expressly requested herein by entering the Proposed Order accompanying this Application and such further relief as may be fair and equitable, just or lawful.

Respectfully submitted,

DATED: **February 10, 2025**      **/s/ William S. Gannon**
**William S. Gannon, BNH 01222 (NH)**

Applicant for

**QUICK SERVE, LLC**

WILLIAM S. GANNON PLLC
740 Chestnut Street
Manchester, NH  03104
PH: 603-621-0833
FX: 603-621-0830
bgannon@gannonlawfirm.com